**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ROUND ROCK RESEARCH, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 4:11-cv-00332-MHS-ALM** |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ORACLE CORPORATION and** | ) | |
| **DELL, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ROUND ROCK RESEARCH'S OPPOSITION TO
DEFENDANTS MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................................. 1

III. LEGAL STANDARD........................................................................................................ 5

IV.  ARGUMENT ..................................................................................................................... 6

A.  Defendants Make No Attempt To Demonstrate That This Claim Could Have Been Brought In The Western District Of Texas. ................................................................................................. 7

B.   The Private Interest Factors Weigh Against Transfer........................................................... 7

1.   Relative Ease of Access of Sources of Proof. ................................................................. 7

2.   Availability of Compulsory Process to Secure Attendance of Non-Party Witnesses. ...... 9

3.   Cost of Attendance of Willing Witnesses ...................................................................... 11

C.   The Public Factors Weigh Against Transfer........................................................................ 13

1.   The Administrative Difficulties Flowing From Court Congestion. .............................. 13

2.   The Local Interest in Having Localized Interests Decided at Home. .......................... 14

3.   Familiarity of the Forum With the Governing Law and Avoidance of Unnecessary Problems of Conflicts of Laws. ..................................................................................... 14

D.   The Balance of the Factors Weigh Against Transferring This Action........................... 15

IV.  CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Balthasar Online, Inc. v. Kimberly-Clark Corp.*, No. 2:09-cv-188-TJW, 2011 WL 1235143 (E.D. Tex. Mar. 30, 2011)..................................................................................................... 12

*Careview Commc'ns, Inc. v. Silicon Std. Corp.*, No. 4:09-cv-176-MHS-ALM, 2009 WL 2998326 (E.D. Tex. Sep. 17, 2009)..................................................................................................... 8

*Dell USA L.P. v. Lucent*, No. 4:03-cv-347-RAS (E.D. Tex. Sep. 12, 2003.) ............................... 12

*Empire Indemnity Ins. Co. v. N/S Corp.*, No. 4:11-cv-166-MHS-ALM, 2011 WL 3648510 (E.D. Tex. Jul. 20, 2011).................................................................................................. 5, 7

*Global Sessions L.P. v. Travelocity.com L.P.*, No. 6:10-cv-671-LED-JDL, slip op. (E.D. Tex., Aug. 26, 2011)............................................................................................................ 8, 12, 14

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ........................................................................... 6

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ...................................................................................... 7

*Hoffman-LaRoche* (587 F.3d 1333 (Fed. Cir. 2009)................................................................... 12

*ICHL, LLC v. NEC Corp. of Am.*, No 5:08-cv-65-DF-CMC, 2009 WL 1748573  (E.D. Tex. Jun. 19, 2009)............................................................................................................... 11, 14

*In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)............................................................ 13

*In re Nintendo*, 589 F.3d 1194 (Fed. Cir. 2009) ........................................................................ 12

*In re TS Tech USA Corp.* (551 F.3d 1315 (Fed. Cir. 2008))................................................... 8, 14

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) (*Volkswagen II*) ...... 5, 6, 9

*Internet Machines, LLC v. Alienware Corp.*, No. 6:10-cv-23-MHS, slip op. (E.D. Tex. Jun. 17, 2011)........................................................................................................................... 5, 14, 15

*Konami Dig. Ent. Co. Ltd. v. Harmonix Music Sys.*, No. 6:08-cv-286- LED-JDL, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ............................................................................... 8

*Mass Eng'g, Inc. v. 9X Media, Inc.*, No. 2-09-cv-358-TJW, 2010 WL 2991018 (E.D. Tex. July 28, 2010)................................................................................................................... 15

*Perritt v. Jenkins*, No. 4:11-cv-23-MHS-ALM, 2011 WL 3511468 (E.D. Tex, Jul. 18, 2011) ..... 8

*Red River Fiber Optic Corp. v. Verizon Services Corp.*, No. 2:08-CV-215-TJW-CE, 2010 WL 1076119 (E.D. Tex. Mar. 23, 2010). ................................................................................... 12

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,* 607 F. Supp. 2d 769 (E.D. Tex. 2009).. 14

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,* 614 F. Supp. 2d 772 (E.D. Tex. 2009).. 10

*Vasudevan Software Inc. v. IBM* (No. 2:09-cv-105, 2009 WL 3784371 (E.D. Tex. Nov. 10, 2009)
................................................................................................................................. 12

*Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-cv-313-TJW-CE, 2009 WL 3161370
   (E.D. Tex. Sep. 30, 2009)................................................................................... 11, 12

*Williams v. Toyota Motor Corp.,* No. 2-07-cv-442-TJW, 2008 WL 5158583 (E.D. Tex. Dec. 9,
   2008)............................................................................................................... 9, 10

*WorldPak Int'l, LLC v. Diablo Valley Packaging, Inc.*, No. 4:08-cv-469-MHS-ALM, 2009 WL
   1708080 (E.D. Tex. Jun. 16, 2009) ..................................................................... 8, 11

**Statutes**

28 U.S.C. § 1400(b). ............................................................................................ 15

28 U.S.C. § 1404(a) ............................................................................................... 5

Fed. R. Civ. P. 12(h)(1)(A). .................................................................................... 7

Fed. R. Civ. P. 45(c)(3)........................................................................................ 10

## I.      INTRODUCTION

Having first brought twin motions to dismiss, Defendants Oracle Corporation ("Oracle")

and Dell Inc. ("Dell") (collectively, the "Defendants") now bring a third motion to delay the

progress of the case—this time seeking transfer under 28 U.S.C. 1404(a).  Defendants fall well

short of the required showing that their proposed transferee forum would be clearly more

convenient than litigation in this District; indeed, the only apparent increased convenience to

anyone might be to shave some driving time for a few Dell party witnesses when the case is

tried.   But Dell's request to transfer the action is belied not only by the global data center it

operates in this District; Dell itself has also chosen this District for its own patent litigation,

revealing the absence of any meaningful inconvenience.  Contrary to Defendants' contentions,

the balance of the *Volkswagen II* factors favor keeping this action in Sherman, because it is

central to one of the largest concentration of privately-operated data centers in the world—all of

whom are either in this District or within the subpoena power of this Court, and many if not all

of whom use the Defendants' infringing technology.   Because the balance of the 1404(a)

convenience factors weigh strongly against transfer, Defendants' motion should be denied.

## II.     STATEMENT OF FACTS

Plaintiff Round Rock Research, LLC ("Round Rock Research") filed this patent

infringement action against Defendants because they make, use, sell, offer to sell, and/or import

the accused servers equipped with the patented remote monitoring and management technology,

and they encourage their customers to use that infringing functionality. Defendants include the

patented technology in their products to implement the highly desirable (and ubiquitously used)

functions of remote monitoring and management, in order to provide what the Defendants and

other computer server manufacturers call "lights-out management"—that is, providing the ability

to remotely monitor and manage servers (even when those servers malfunction) without needing

to be physically in the same room as the managed systems.  (*See, e.g.,* Exs. 1, 2, 5.)  Both Oracle

and Dell offer remote management and lights-out management solutions for their servers that

incorporate the patented technology at issue in this case.   For example, Dell describes its

integrated  Remote Access Controller ("iDRAC") as follows:

> The Integrated Dell™ Remote Access Controller (iDRAC) in a Dell
> PowerEdge™ server "helps make your server administrators more
> productive, improves the overall availability of Dell servers and saves
> costs. With powerful, easy-to-use remote management and configuration
> options, iDRAC alerts administrators to severe problems, enables
> streamlined remote server management (both local and remote), and
> reduces or eliminates the need for administrators to visit the server —
> even when the server is not operational.

(Ex. 2.)  Oracle offers the same capability through the use of its Integrated Lights Out Manager:

> Oracle's Integrated Lights Out Manager (ILOM) provides advanced
> service processor hardware and software that you can use to manage and
> monitor your Oracle Sun servers. Oracle ILOM's dedicated hardware and
> software is preinstalled on a variety of Oracle Sun server platforms . . . .
> Oracle ILOM is a vital management tool in the data center and can be used
> to integrate with other data center management tools already installed on
> your systems.

(Ex. 3.)  Defendants and their corporate customers (who operate, monitor, manage, and lease

Defendants' servers) employ that functionality to obtain significant cost and time savings in

managing their information technology systems.  (Exs. 4, 5.)

As it happens, many of Defendants' customers operate data centers and "server farms" in

the Eastern District of Texas and within the greater Dallas-Fort Worth metropolitan area:



(Ex. 6; Data Center map generated from http://www.datacentermap.com on September 26, 2011.)  Indeed, the Dallas metropolitan area, which includes cities in the Eastern District, is a prime location for data centers in the world.  (Exs. 7-9.)  And although not disclosed in its motion, Dell also operates its own data center in this District (Plano, Texas), which houses the Dell Services business unit:

> The combined Dell Services business unit represents almost $8 billion in annual revenue. With more than 43,000 team members working in 90 countries, Dell Services, based in Plano, operates 60 technology support centers around the world, 36 customer data centers and provides technical support for 14 million client systems and 10,000 Software-as-a-Service (SaaS) customers, according to the Round Rock, Texas-based company.

(Ex. 10.)  According to Dell's own promotional video describing its Plano Technology Center and the hardware and services it offers to its customers from that location, the Plano Center's "onsite and remote management options will also help . . . reduce total cost of ownership…." (Ex. 11 (available at http://www.youtube.com/watch?v=TVwLR_kI9iQ at 2:39, last visited on Sep. 26, 2011).)

Cognizant of those facts, Round Rock Research brought suit in this District because the infringing products are used, sold, and offered for sale in this District; because probable sources

3

of proof may be found within the District; and because many third parties that will be relevant to this action lie within the subpoena power of this Court.

First, many of Defendants' customers have data center facilities in this district—whether or not their headquarters may be elsewhere. (D.I. 32 at 4 (admitting that Dell and Oracle-customer LayeredTech, Inc. is located in the Eastern District; Ex. 12 (showing LayeredTech's address as 50585 West Park Boulevard, Plano Texas); Ex. 13 (showing that Dell-customer Horizon Data Center Solutions "Dallas I" data center is located at 4025 Midway Road, Carrollton, Texas); Ex. 14 (showing Dell-customer Softlayer Technologies Inc. with an address at 6400 International Parkway #2000, Plano, Texas)

Further, Round Rock Research has discovered numerous, additional, exemplary direct infringers who also have data center operations well within 100 miles of the Sherman Courthouse:

**Table 1**

| Entity | Customer of | Facility Location | Driving Distance to the Sherman Courthouse (mi) | Exhibit |
|---|---|---|---|---|
| Rackspace, Inc. | Dell | 801 Industrial Boulevard Grapevine, Texas | 69.2 | 6, 21, 28 |
| VIRTBIZ, Inc. | Dell | 2805 Canton Street Dallas, Texas | 64.2 | 15, 21 |
| NeoSpire | Dell | 1807 Ross Avenue #300, Dallas, Texas | 63.5 | 16, 21, 22 |
| Verio, Inc. | Oracle | 15950 Dallas Parkway, Dallas, Texas | 58.6 | 17, 21, 23 |
| Firehost | Dell | 2360 Campbell Creek Blvd, Richardson, Texas | 49.2 | 18, 21 |
| Enkitec | Oracle | 5065 North MacArthur Boulevard, Irving, Texas | 67.0 | 19, 21 |
| SunGard | Dell and Oracle | 1001 East Campbell Road, Richardson, Texas | 49.5 | 20, 21 |

Each of those companies uses Dell and/or Oracle servers and offer 24/7 managed hosting services, which implicate use of the same Dell and Oracle accused hardware, software, and functionality that infringes Round Rock Research's asserted patents. (*See, e.g.,* Ex. 22 ("Neospire chose Dell products because the company wanted a reliable server platform with robust management tools…"); Ex. 12 ("[LayeredTech's] Monitoring Service features 24x7 system monitoring of your critical servers and applications."); Ex. 23 ("You can choose from many [of Verio, Inc.'s] Managed Hosting Solutions…Constant monitoring guarantees solution effectiveness").) Round Rock Research anticipates that these third-parties will be sources of proof of Defendants' infringement of the Patents-in-Suit.

## III. LEGAL STANDARD

Under 28 U.S.C. § 1404(a) a Court may transfer a case "for the convenience of parties and witnesses, in the interest of justice." The movant must show good cause for the transfer and that transferee venue "is clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*Volkswagen II*). "Otherwise, a plaintiff's choice of venue must be respected." *Empire Indemnity Ins. Co. v. N/S Corp.*, No. 4:11-cv-166-MHS-ALM, 2011 WL 3648510, at *2 (E.D. Tex. Jul. 20, 2011) (citing *Volkswagen II*, 545 F.3d at 315 n.10). Transfer is not clearly more convenient—and thus should not be made—where the only practical effect is to shift the inconvenience from the moving party to the non-moving party. *See, e.g., Empire Indemnity*, 2011 WL 3648510, at *6.

A threshold inquiry is whether suit "might have been brought" in the proposed transferee venue. *Internet Machines, LLC v. Alienware Corp.*, No. 6:10-cv-23-MHS, slip op. at 4 (E.D. Tex. Jun. 17, 2011) (citing *Volkswagen II*, 545 F.3d at 312). Once a defendant satisfies that burden, the Court weighs several factors to determine if transfer is warranted. *Id.*; *see also Gulf*

5

*Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (listing the relevant factors).  The Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice.  *Volkswagen II*, 545 F.3d at 315.  The private-interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Id*.  The public-interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id*.  Those factors are not exhaustive, and no single factor is dispositive.  *Id.*

## IV.   ARGUMENT

Dell and Oracle have not met their burden to justify transfer of this case to the Western District of Texas.  On the contrary, this District—and this Division in particular—is, on balance, the most convenient location to resolve this patent infringement case:  it is central to a significant concentration of datacenters, which will be sources of proof for Round Rock Research's allegations; it is likewise close to the principal place of business of one of the Defendants; and it is no more inconvenient than the Western District of Texas for the far-flung, recently-identified party and non-party witnesses identified by Dell and Oracle.  (*See* D.I. 32, Hackett Decl., Knight Decl.)  As such, Defendants have not demonstrated that the Western District is ***clearly more convenient*** than this District, and the Court should accordingly deny their motion.

### A. Defendants Make No Attempt To Demonstrate That This Claim Could Have Been Brought In The Western District Of Texas.

Defendants ignore the threshold inquiry as to whether this suit could have been filed originally in the transferee district. *See e.g.*, *Volkswagen II*, 545 F.3d at 314.  While Dell is a resident of the Western District, Oracle is not.  And although Oracle does not dispute this Court's personal jurisdiction over it (D.I. 32 at 5 n.4), [1] that waiver does not establish personal jurisdiction in the Western District of Texas, nor is Oracle's apparent consent to personal jurisdiction in that district relevant to the threshold inquiry.  *Empire Indemnity*, 2011 WL 3648510, at *4 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) ("the power of a District Court under §1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff")).).  Since the Defendants have not met the required threshold showing that this case could have been brought in the Western District of Texas, their motion should be rejected on that basis alone.

### B.      The Private Interest Factors Weigh Against Transfer.

#### 1.      Relative Ease of Access of Sources of Proof.

Courts analyze this factor in light of the distance that documents or other evidence that must be transported from their existing venue to the transferee district.  *Volkswagen II*, 545 F.3d at 316.  Sources of proof for this case lie within the Eastern District of Texas and within the subpoena power of this Court.  Although Defendants point to Round Rock, Texas as *one* location for sources of proof for Dell's DRAC appliance, that does not end the inquiry under this factor.  *See, e.g., Global Sessions L.P. v. Travelocity.com L.P.*, No. 6:10-cv-671-LED-JDL, slip op. at 5

---

[1] Indeed, because Oracle did not challenge this Court's personal jurisdiction in its earlier 12(b)(6) motion, Oracle has waived its right to challenge personal jurisdiction in the Eastern District of Texas.  Fed. R. Civ. P. 12(h)(1)(A).

(E.D. Tex., Aug. 26, 2011) (finding this factor weighs against transfer where "the entirety of the documents and physical evidence relevant to the case are not concentrated in or near the transferee forum."). Unlike cases such as *Volkswagen* and *In re TS Tech USA Corp.* (551 F.3d 1315 (Fed. Cir. 2008)), it is apparent from Defendants' submission that the documents and evidence relevant to the case are not concentrated within the proposed destination venue; instead they are dispersed throughout the country. Indeed, Defendants have admitted and identified multiple sources of proof that lie outside the Western District, the State of Texas, and even outside the United States. (D.I. 32 Hackett Decl. ¶¶ 5,6 (identifying persons responsible for the DRAC product in Georgia, Alabama, Florida, California, India, and Taiwan; Knight Decl. ¶ 4 (identifying persons responsible for the Oracle ILOM product in Massachusetts, Colorado, California, the Czech Republic, and China)). An action in Austin is not clearly more convenient for such allegedly "likely" witnesses than this one in Sherman; the mere allegation that some witnesses are in the Austin area does not make this district clearly more convenient for this action as a whole. *See, e.g.*, *Konami Dig. Ent. Co. Ltd. v. Harmonix Music Sys.*, No. 6:08-cv-286- LED-JDL, 2009 WL 781134, at * 4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point to [the transferee district] as the location of significant sources of proof, they ignore the remaining sources of proof which originate from other locations."); *see also, e.g.*, *WorldPak Int'l, LLC v. Diablo Valley Packaging, Inc.*, No. 4:08-cv-469-MHS-ALM, 2009 WL 1708080, at *4 (E.D. Tex. Jun. 16, 2009) ("Because the sources of proof originate from varied locations, this factor is neutral"); *Perritt v. Jenkins*, No. 4:11-cv-23-MHS-ALM, 2011 WL 3511468, at *3 (E.D. Tex, Jul. 18, 2011) (same); *Careview Commc'ns, Inc. v. Silicon Std. Corp.*, No. 4:09-cv-176-MHS-ALM, 2009 WL 2998326, at *4 (E.D. Tex. Sep. 17, 2009) (same). Because Defendants have

not shown that access to sources of proof are clearly more convenient in the Western District, this factor weighs against transfer.[2]

### 2.     Availability of Compulsory Process to Secure Attendance of Non-Party Witnesses.

The second private-interest factor also strongly weighs against transfer because many relevant non-party witnesses have facilities in this District that use the infringing products, practice the infringing methods, and are within the subpoena power of this Court. The Court's subpoena power is limited by Federal Rule 45(c)(3), which protects non-party witnesses who live or work more than 100 miles from the courthouse. Fed. R. Civ. P. 45(c)(3); *Volkswagen II*, 545 F.3d at 304. Because "the convenience of the parties and their witnesses is given less weight in a transfer analysis than the convenience of non-party witnesses," courts in this District have given this factor considerable weight when considering a motion to transfer. *Williams v. Toyota Motor Corp.,* No. 2-07-cv-442-TJW, 2008 WL 5158583, at *3 (E.D. Tex. Dec. 9, 2008).

Although Defendants admit that they have identified *no* third parties that are within 100 miles of Austin, Texas (D.I. 32 at 8), Round Rock Research has identified and named numerous exemplary third-party direct infringers in its Complaint who are within the subpoena power of this Court. (*See, e.g.*, Exs. 12-24.) Moreover, Round Rock Research continues to identify and locate additional third parties within the subpoena power of this Court. As described above, the

---

[2] Defendants' equivocal claim that Austin "may be more convenient for out-of-state witnesses" (D.I. 32 n.6) is without factual support. Indeed, it is at least as convenient for out-of-state third parties to travel to Sherman, which is an hour away from one of the world's largest travel hubs. For example, there are 23 daily non-stop flights from San Francisco to DFW airport as compared with seven from San Francisco to Austin. (Exs. 24, 25, http://www.orbitz.com, visited on Sep. 26, 2011.) For at least those reasons, Sherman, Texas is a more convenient location than Austin, Texas for out-of-state witnesses to the extent any witness travel is required. Thus, to the extent the Court weighs travel convenience in its analysis of this factor, the availability and flexibility of flights into DFW further support maintaining this action in Sherman.

Dallas-Fort Worth metropolitan area (which extends into the Eastern District), has a globally significant concentration of data centers. (Exs. 7, 8.) Many of those data centers—including, but not limited to, the Dell and Oracle customers identified in the Complaint—purchase, lease, and house servers made by the Defendants that use or contain the infringing hardware and functionality: the commercially pivotal ability to be remotely managed and monitored by system administrators employed by those data centers. (*See, e.g.,* Ex. 12 ("Monitoring delivers the assurance you need that your critical network resources and servers are under careful surveillance 24 hours a day").)

Defendants attempt to minimize the importance of customers using the infringing technology, contending that "[T]he named customers [of the Defendants] are irrelevant to the transfer analysis." (D.I. 32 at 9.) But that contention ignores both the law of this District and Round Rock Research's indirect infringement allegations. As discussed above, the convenience and location of relevant third parties are of primary importance to the transfer analysis. *See, e.g.*, *Williams*, 2008 WL 5158583, at *3 ("the convenience of the parties and their witnesses is given less weight in a transfer analysis than the convenience of non-party witnesses"); *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,* 614 F. Supp. 2d 772, 779 (E.D. Tex. 2009) (same) . That factor takes on even greater weight in a case like this one, which includes infringement of method claims. Accordingly, Round Rock Research expects that Dell (and Oracle's) customers who purchase the infringing systems will be an important source of proof regarding the importance and use of the patented methods are used, and that Defendants encourage such use. Accordingly, the *Volkswagen II* convenience factor analysis must necessarily account for the locations of the customers Round Rock Research has identified who will be sources of such third-party information. (Exs. 12-20.)

10

### 3.    Cost of Attendance of Willing Witnesses

Contrary to Defendants' arguments, this factor does not support transfer because Defendants have not clearly demonstrated that all or even a majority of party witnesses would benefit from moving this case to the Western District of Texas.  Unlike *Volkswagen II* or *TS Tech*, this is not a case where the evidence is substantially located in or near the transferee forum.  Indeed, Defendants' supporting declarations identify relevant witnesses outside the Western District, the State of Texas, and the United States. (D.I. 32 Hackett Decl. ¶¶ 5,6; Knight Decl. ¶ 4 (naming persons and offices with alleged responsibility for research, design, marketing, manufacturing, and sales of DRAC and ILOM, respectively.)  In such cases, courts in this district routinely find that this factor is neutral or weighs against transfer.  *See, e.g.*, *WorldPak Int'l.*, 2009 WL 1708080, at *5 ("In *Volkswagen II* all witnesses lived in the transferee district, which is not the case here."); *Perritt*, 2011 WL 3511468, at *5 (same); *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-cv-313-TJW-CE, 2009 WL 3161370, at *4 (E.D. Tex. Sep. 30, 2009) (denying motion to transfer a patent infringement case from the Eastern District of Texas to the Western District of Texas); *ICHL, LLC v. NEC Corp. of Am.*, No 5:08-cv-65-DF-CMC, 2009 WL 1748573, at *7, *11 (E.D. Tex. Jun. 19, 2009) (finding this factor weighed against transfer where the defendants failed to demonstrate that there was a localized focus of people, events, and evidence in the transferee forum so as to make that venue clearly more convenient.)

Moreover, Dell's contention that it has no personnel in this District related to this case is incorrect.  Based on publicly available information (including Dell's own promotional video), Dell's Plano Technology Center contains servers that implement the infringing technology.  Use of those servers by Dell's employees at Dell's Plano datacenter directly infringe the asserted patents.  Contrary to Dell's assertions for the purposes of its motion (and not surprisingly in light

11

of the concentration of data centers in the Sherman area), both party and non-party witnesses and evidence are located within the District, including Dell's own employees.

Finally, even assuming that Dell would prefer to move this action to Austin (notwithstanding Dell's employees in its Plano Technology Center), Defendants have not shown that the parties would achieve a significant reduction of travel costs by moving this action approximately 240 miles south.[3]   As multiple Courts in this District have affirmed, there is negligible difference in the cost to attend trial in the Eastern District versus the Western District. *See, e.g.*, *Versata Software*, 2009 WL 3161370, at *4; *Global Sessions*, No 6:10-cv-671-LED-JDL, slip op. at 8 (commenting that Tyler, Texas is close enough to Austin, Texas so as not to greatly inconvenience witnesses that must travel from Austin).  Finally, and as shown above, it is at least as convenient for out-of-town party witnesses to attend trial in Sherman than in Austin. Because Defendants have not shown that transferring this action is clearly more convenient for party witnesses to attend trial, this factor does not support transfer.[4]

---

[3] Nor can Dell plausibly claim inconvenience from litigating in the Eastern District, since Dell itself has chosen to file infringement actions as a plaintiff in this District.  (*See* Ex. 26, *Dell USA L.P. v. Lucent*, No. 4:03-cv-347-RAS (D.I. 1) (E.D. Tex. Sep. 12, 2003.)

[4] Defendants cite no authority that compels a different result.  *In re Genentech* did not present a situation where multiple third-party witnesses reside within the District and/or subpoena power of the Court.  566 F.3d 1338, 1343 (Fed. Cir. 2009).  Similarly, neither *Hoffman-LaRoche* (587 F.3d 1333 (Fed. Cir. 2009)), *In re Nintendo* (589 F.3d 1194 (Fed. Cir. 2009)), nor *Vasudevan Software Inc. v. IBM* (No. 2:09-cv-105, 2009 WL 3784371 (E.D. Tex. Nov. 10, 2009), involved allegations similar to this case.  *Red River Fiber Optic Corp. v. Verizon Services Corp.* concerned a transfer motion from the Marshall Division to the Northern District of Texas where the Court concluded—based on the particular facts of that case—that substantially all the infringing activity by defendants occurred in the Dallas area, that "[n]either venue is appreciably more convenient to the non-party witness[es]," and given that the availability of direct flights to Dallas made that venue somewhat more convenient than Marshall.  No. 2:08-CV-215-TJW-CE, 2010 WL 1076119, at *2 (E.D. Tex. Mar. 23, 2010).  *Balthaser Online v. Kimberly-Clark Corp.* involved patent infringement allegations against four national companies and one company whose only presence was in the Southern District of Texas.  No. 2:09-cv-188-TJW, 2011 WL 1235143, at *1 (E.D. Tex. Mar. 30, 2011).  Here, Dell claims to have identified relevant witnesses throughout the globe, and has a demonstrable relevant presence in the Eastern District

        **C.**      **The Public Factors Weigh Against Transfer.**

        **1.**      **The Administrative Difficulties Flowing From Court Congestion.**

This is the most speculative factor in the transfer analysis. *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Defendants contend that court congestion favors transfer because the time to trial is faster in the Western District of Texas, citing judicial caseload profile reports from the www.uscourts.gov website. (D.I. 32 at 12; Fountain Ex. D.) Unfortunately, those reports are at best equivocal as far as drawing any conclusion regarding relative court congestion in the case. First, the median time to trial between the districts is often negligible. (*See id.* (as recently as 2008 the median time from filing to trial in civil cases was 18.5 months in the Eastern District, and 18.0 months in the Western District—a two-week difference).) Moreover, Defendants rely on general case statistics rather than patent-specific statistics. Contrary to Defendants' arguments, patent-specific time to trial statistics actually weigh against transfer: a 2010 study found that patent cases reach trial in the Eastern District approximately four months faster than in the Western District. *See* Lemley, Mark A., *Where to File Your Patent Case*, 38 AIPLA Q. J. 401, 416, Table 6 (Fall 2010) (demonstrating that the Eastern District has a faster median time-to-trial interval in patent cases—2.13 years—than the Western District of Texas— 2.52 years).

Finally, other considerations tend cut against transfer. For example, the Eastern District handles almost three times as many patent cases (299 to 102) than the Western District, and therefore has substantial additional experience and expertise in keeping these complicated cases moving efficiently toward disposition. (Ex. 27, Table C-3.) Additionally, transferring this case to the Western District may well further increase the time to trial. Furthermore, the judicial

---

at least through the conceded sale of the accused products to its customers that have facilities in the District, and the operation of its own data center in the District.

caseload profile reports show that the Western District has almost twice as many "actions per judgeship" than the Eastern District—894 to 498 (D.I. 32, Fountain Ex. D); as courts have recognized, that disparity weighs against the proposed transfer here. *See, e.g.*, *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,* 607 F. Supp. 2d 769, 780 (E.D. Tex. 2009) (finding actions per judgeship a "relevant statistic" for transfer analysis).

### 2. The Local Interest in Having Localized Interests Decided at Home.

This factor is neutral. Oracle and Dell sell their infringing servers worldwide. Neither Defendant disputes that this venue is proper under 28 U.S.C. § 1400(b). "[I]n a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district." *Internet Machines*, No. 6:10-cv-23-MHS, slip op. at 15; *see, e.g*., *ICHL*, 2009 WL 1748573, at *13 (citing *In re TS Tech*, 551 F.3d 1315, 1321 (2008)) (same). Neither Dell nor Oracle can seriously dispute that their accused servers are marketed and sold nationwide. As such, the Western District has no more meaningful connection to the allegations in this case than the Eastern District.

### 3. Familiarity of the Forum With the Governing Law and Avoidance of Unnecessary Problems of Conflicts of Laws.

Although Defendants do not address these factors, they nonetheless weigh against transfer. As this Court has recently recognized, the Eastern District is a participant in the Patent Pilot Program, whereas the Western District is not. *Global Sessions*, No. 6:10-cv-671-LED-JDL, slip op. at 10 (citing E.D. Tex. Gen'l Order 11-11). Accordingly, this factor also weighs against transfer.

**D.**      **The Balance of the Factors Weigh Against Transferring This Action.**

The balance of the *Volkswagen II* factors weighs against transferring this action. Contrary to Defendants' arguments, this case will involve discovery from several third parties that reside in this District, and several others within the subpoena power of this Court. Round Rock Research will need to secure testimony and evidence from those third parties during the course of this action. Moreover, Defendants have not clearly demonstrated that the Western District of Texas is more convenient to sources of proof—or even for the majority of its own party witnesses. Accordingly, the Court should deny Defendants' motion to transfer the action to the Western District of Texas.

Although Round Rock Research does not believe discovery is required to address Defendants' motion, to the extent the Court is inclined to grant Defendants' motion to transfer at this early stage, Round Rock Research respectfully requests that the Court first permit discovery on the issue. *See Internet Machines*, No. 6:10-cv-023-MHS (D.I. 218) (E.D. Tex. Nov. 4, 2010) (granting request preliminary written discovery and 30(b)(6) depositions); *Mass Eng'g, Inc. v. 9X Media, Inc.*, No. 2-09-cv-358-TJW, 2010 WL 2991018, at *2 (E.D. Tex. July 28, 2010) (same).

## IV.      CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue should be denied.


DATED:  September 26, 2011                    By: /s/ Jonas R. McDavit
                                              Paul A. Bondor
                                              pbondor@desmaraisllp.com
                                              Jonas R. McDavit
                                              jmcdavit@desmaraisllp.com
                                              DESMARAIS LLP
                                              230 Park Avenue
                                              New York, NY 10169

(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

*Lead Counsel for Plaintiff*
*Round Rock Research, LLC*

James C. Tidwell
Texas State Bar No. 20020100
WOLFE, TIDWELL & MCCOY, LLP
320 North Travis Street, Suite 205
Sherman, TX 75090
(903) 868-1933 (Telephone)
(903) 892-2397 (Facsimile)

*Local Counsel for Plaintiff*
*Round Rock Research, LLC*