# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ROUND ROCK RESEARCH, LLC § § § | |
| v. § § § | Case No. 4:11-CV-332 Judge Schneider/Judge Mazzant |
| ORACLE CORPORATION and § DELL, INC. § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants' Motion to Transfer Venue to the Western District of Texas (Dkt. #32). Having considered the relevant pleadings, the Court is of the opinion that Defendants' motion should be denied.

### BACKGROUND[1]

Plaintiff Round Rock Research, LLC ("Plaintiff") is a Delaware limited liability company with its principal place of business in Mount Kisco, New York. COMPLAINT at ¶ 1. Defendant Oracle Corporation ("Oracle") is a Delaware corporation with its principal place of business in California. COMPLAINT at ¶ 2; MOTION at 4. Defendant Dell, Inc. ("Dell") is a Delaware corporation with its principal place of business in Round Rock, Texas, located in the Western District of Texas. COMPLAINT at ¶ 3; MOTION at 4.

In late 2009, Plaintiff became the owner of approximately 4,500 patents purchased from Micron Technology. On June 8, 2011, Plaintiff filed this action against Dell and Oracle, alleging that each defendant infringes U.S. Patent Nos. 6,088,816; 6,145,098; 6,170,067; 6,199,173;

---

[1] All background facts are taken from the Complaint (Dkt. #1), Defendants' Motion to Transfer Venue (Dkt. #32), and Plaintiff's Response (Dkt. #36).

6,243,838; 6,266,721; 6,425,006; 6,553,416; and 6,681,342.  Plaintiff alleges that both Oracle and Dell have infringed and continue to infringe the patents, "either literally and/or under the doctrine of equivalents, directly and/or indirectly, by making, using, offering for sale, selling, and/or importing into the United States infringing systems."  Plaintiff also alleges that Oracle and Dell indirectly infringed the patents by "encouraging [their] customers to implement and practice the claims of the [patents], including [Oracle's/Dell's] customers who make, use, sell, and/or offer to sell servers implementing [Oracle's/Dell's] remote monitoring systems."  Plaintiff alleges that Dell customers who "make, use, sell, and/or offer to sell," the infringing products include VIRTBIZ, Inc., NeoSpire, Inc., Rackspace, Inc., and LayeredTech, Inc.  Plaintiff also alleges that Oracle customers who "make, use, sell, and/or offer to sell," the infringing products include Verio, Inc.  Plaintiffs accuse two specific products of infringing the patents-at-issue, the Dell Remote Access Card ("DRAC") and the Oracle Integrated Lights-Out Manager ("ILOM") monitoring systems.

On September 7, 2011, Defendants filed this Motion to Transfer Venue to the Western District of Texas (Dkt. #32).  On September 26, 2011, Plaintiff filed its Response in Opposition to Defendants' Motion to Transfer Venue (Dkt. #36).  Defendants filed their Reply in Support of Their Motion to Transfer Venue to the Western District of Texas on October 7, 2011 (Dkt. #37).  On October 17, 2011, Plaintiff filed its Sur-Reply to Defendants' Motion to Transfer Venue (Dkt. #38).

## STANDARD

A district court may transfer any civil case "for the convenience of parties and witnesses, in the interest of justice...to another other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have

been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I").

Once that threshold inquiry is met, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II"); *In re Nintendo*, 589 F.3d at 1198. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *TS Tech,* 551 F.3d at 1319. The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10; *TS Tech*, 551 F.3d at 1320; *In re Nintendo*, 589 F.3d at 1200.

## ANALYSIS

The first question the Court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have been filed originally in the destination venue.

*Volkswagen II*, 545 F.3d at 312. Plaintiff disputes whether this action could have been brought in the Western District of Texas (the "Western District"). Plaintiff asserts that Defendants failed to meet their burden to show that the Western District could have personal jurisdiction over Defendants, and that it is a proper venue for this action. OPP. at 7.

It is undisputed that Dell resides in Round Rock, Texas, located in the Western District. The Western District clearly has personal jurisdiction over Dell, who resides in the District. Oracle is incorporated in Delaware and has its principal place of business in California; however, Oracle has Austin-based employees who have worked on core ILOM technology. MOTION at 7. In addition, the parties agree that Oracle sells the accused products worldwide, including within the Western District.

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement, and has a regular and established place of business. 28 U.S.C. § 1400. For purposes of venue:

> a defendant that is a corporation shall be deemed to reside... in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). The Defendant need only establish a prima facie case for personal jurisdiction and venue in the Western District to satisfy the threshold requirement. *Id.*

None of the parties have challenged personal jurisdiction in the State of Texas, or venue in the Eastern District. Therefore, Oracle will be deemed to reside in any district where its contacts are sufficient to subject it to personal jurisdiction, or in the district where it has the most significant

4

contacts. Oracle has an office in Austin, including employees that worked on the product accused of infringement. The only other contacts Oracle has in Texas are in the Northern District of Texas, where one of Oracle's customers, Verio, Inc., is located. Oracle has no contacts within the Eastern District of Texas (the "Eastern District"). Further, Oracle committed alleged infringing acts and has a regular, established place of business in the Western District. Therefore, the Court finds that Defendants have satisfied their burden to establish a prima facie case of personal jurisdiction and venue, and the action could have been brought in the Western District.

In addition, the Court must review a number of private and public factors with regard to convenience on a motion to transfer venue. *Volkswagen II*, 545 F.3d at 315; *TS Tech*, 551 F.3d at 1319.

## A. Private Interest Factors

*(1) The Relative Ease of Access to Sources of Proof*

"Courts analyze this factor in light of the distance that documents, or other evidence must be transported from their existing location to the trial venue." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (citing *Volkswagon II*, 545 F.3d at 316). This factor will rely on which party has a greater volume of documents relevant to the litigation, and their presumed location in relation to the transferee and transferor venues. *Id*. (citations omitted). Documents that have been moved in anticipation of litigation should not be considered. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).

Defendants assert that a majority of documents and physical evidence relating to the patent infringement claims against Dell are located at their headquarters and principal place of business in

5

the Western District. MOTION at 8. Further, some of the documents relating to the patent infringement claims against Oracle are also located in the Western District. *Id*. Although it is not expressly stated by the parties, the Court assumes that Oracle will have a significant number of documents at its principal place of business in California. Defendants contend that no documents or other evidence is located in the Eastern District. *Id*.

Plaintiff argues that documents related to the case are not concentrated in the Western District, but instead are dispersed throughout the country and around the world. OPP. at 8. Plaintiff claims that sources of proof for Dell are located in Georgia, Alabama, Florida, California, India and Taiwan. *Id*. Plaintiff asserts that relevant sources of proof for Oracle are located in Massachusetts, Colorado, California, the Czech Republic, and China. *Id*. Further, Plaintiff claims that a significant source of proof regarding the use of the infringing technology is located in the Eastern District at Dell Services in Plano, Texas. SUR-REPLY at 2.

According to Plaintiff, Dell Services is a data center operated by Dell, and offers hardware and services that use the infringing technology. OPP. at 3. Dell Services, a subsidiary of Dell, "represents almost $8 billion in annual revenue," employs more than 43,000 team members in 90 countries, "operates 60 technology support centers around the world," and "provides technical support for 14 million client systems and 10,000 Software-as-a-Service customers." *Id*. Plaintiff contends that the infringing products are used, sold, and offered for sale at Dell Services within the Eastern District. *Id*. Plaintiff argues that documents and physical evidence located at Dell Services will be an important source of proof in demonstrating the use of the infringing technology. SUR-REPLY at 2.

Defendants assert that Dell Services is a Dell subsidiary with no relevant connection to the

infringing technology, and no unique knowledge of the infringing technology that could not be obtained from any other customer of Dell. REPLY at 1. Defendants further contend that Dell Services offers infrastructure and "cloud" hosting services, not products as Plaintiff alleges. REPLY at 4. Defendants assert that the services provided by Dell Services are distinct from the accused products that enable the customers who purchase services from Dell Services to remotely access their own servers. *Id*.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotations omitted). The parties agree that a significant source of documents and physical evidence relating to the accused infringing products is concentrated primarily in the Western District at Dell's headquarters in Round Rock, Texas. However, Defendants ignore the fact that there may be other documents and physical evidence related to the development of the products in conjunction with other third parties in various locations across the country. MOTION, HACKETT DECL. at 3. It is unclear where the primary concentration of Oracle's documents and other physical evidence is located; however, Defendants note that some may exist in the Western District, Colorado, and California, while none exist in the Eastern District. None of the inventors of the patents at issue are located in Texas. Finally, documents and other physical evidence maintained at the Dell Services facility in the Eastern District will serve as a source of proof regarding the use of the infringing technology. *See Consol. Work Station Computing, LLC*, No. 6:10-CV-620-LED, slip. op. at 6 (E.D. Tex. Sept. 28, 2011).

Because the sources of proof originate from varied locations across the country and the globe,

this factor is neutral. Transfer of this case to the Western District would make access to some sources of proof easier, but there is other evidence that would not be more convenient to access. An action in Austin is not "clearly more convenient" for transporting documents that are located around the country. *See, e.g., Konami Dig. Ent. Co. Ltd. v. Harmonix Music Sys.*, No. 6:08-CV-286-LED-JEL, 2009 WL 781134, at *4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point to [the transferee district] as the location of significant sources of proof, they ignore the remaining sources of proof which originate from other locations."); *Perritt v. Jenkins*, No. 4:11-CV-23-MHS-ALM, 2011 WL 3511468, at *3 (E.D. Tex. July 18, 2011) ("Because the sources of proof originate from varied locations, this factor is neutral."). Therefore, the Court finds this factor is neutral.

*(2) The Availability of Compulsory Process*

Federal Rule of Civil Procedure 45(b)(2) allows a federal court to compel a witness' attendance at a trial or hearing by subpoena; however, the Court's subpoena power is limited by Federal Rule of Civil Procedure 45(c)(3), to those witnesses who work or reside less than 100 miles from the courthouse. *See Volkswagen* II, 545 F.3d at 316.

Plaintiff argues that this factor weighs against transfer because it has identified numerous third-party direct infringers of the accused technology that reside within 100 miles of the courthouse in Sherman, and within the subpoena power of the Court. OPP. at 9. These third parties consist of a number of customers of Dell and Oracle, most of whom reside in the Northern District of Texas; however, at least three (3) of the customers identified by Plaintiff reside in the Eastern District. Plaintiff contends that the testimony of these customers "will be an important source of proof regarding the importance and use of the patented methods are [sic] used, and that Defendants encourage such use." OPP. at 10.

8

Defendants have identified no third-party witnesses that reside within 100 miles of either the Eastern or Western Districts. MOTION at 8. However, Defendants argue that the testimony of the third-party witnesses identified by Plaintiff is not specialized testimony. REPLY at 3. Defendants contend that there are other customers with the same relevant testimony residing in the Western District. *Id.* at 4. Further, Defendants assert that the mere sale of an accused product nationwide does not give rise to a substantial interest in any particular venue. MOTION at 9.

It is clear that neither this District, nor the Western District, will have absolute subpoena power over all non-party witnesses, since some are likely to be located across the United States. The Court would have subpoena power of approximately ten (10) third-party witnesses identified by Plaintiff, three within the Eastern District and seven (7) within 100 miles of the Sherman courthouse. The Western District would have subpoena power over two (2) third-party customers identified by Defendants. However, Defendants bear the burden to demonstrate and identify unwilling third-party witnesses that would benefit from the transfer. *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 644 n.14, n.15 (E.D. Tex. 2011).

The Court finds that this factor is neutral. Defendants have identified no potential witnesses within the subpoena power of either Court. Many of Defendants' witnesses are likely to be spread throughout the country, and outside the subpoena power of both the Eastern and Western Districts. Further, while Plaintiff identifies several customers of Defendants likely to have relevant testimony regarding the use of the technology at issue, it is just as likely that there will be former Dell employees and other customers, as identified by Defendants, in the Western District. Therefore, both Courts will have absolute subpoena power over some third-party witnesses, and no subpoena power over some third-party witnesses.

*(3) Cost of Attendance for Willing Witnesses*

The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. Where witnesses are from widely scattered locations, a trial court should not consider its "central location... in the absence of witnesses within the plaintiff's choice of venue." *Genentech*, 566 F.3d at 1344.

Defendants assert that all of Dell's relevant witnesses are located in the Austin area. MOTION at 6. These witnesses include the engineering team, employees related to the DRAC technology, the procurement team, and the marketing team. *Id*. at 6-7. Further, Oracle's likely witnesses are located in Massachusetts, Colorado, California, and other parts of the country. *Id*. at 7. Oracle has a few software engineers in its Austin, Texas facilities that have worked on ILOM technology and may testify. *Id*. None of the inventors of the patents at issue are located in Texas. *Id*. Therefore, Defendants assert that this factor strongly favors transfer, since all of Dell's witnesses and only a few of Oracle's would be inconvenienced by travel to the Eastern District. Defendants have identified no witnesses likely to testify residing in the Eastern District.

Plaintiff alleges that because Defendants cannot show a localized focus of witnesses in the transferee district, that this factor does not support transfer to the Western District. OPP. at 11. Further, Plaintiff contends that other courts have determined that the cost to attend trial in the Eastern District versus the Western District is negligible. *See, e.g., Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-CV-313, 2009 WL 3161370, at *4 (E.D. Tex. Sept. 30, 2009). Plaintiff also asserts

that Dell has substantial witnesses related to this case located at Dell Services in the Eastern District. OPP. at 12. Finally, Plaintiff contends that it is at least equally convenient for out-of-state witnesses to attend trial in either the Eastern or Western Districts. *Id*.

Neither party has identified a specific witness that may have relevant knowledge and who would have to travel to testify. The parties have identified categories of witnesses in both the Eastern and Western Districts, consisting of the current employees of Dell in the Western District regarding the development, marketing, and manufacture of the accused products, and the current employees of Dell Services and other customers of Defendants in the Eastern District regarding the use of the accused products. In addition, the Court finds that for those witnesses traveling from out-of-state, it is equally burdensome to travel to the Eastern District as it would be to travel to the Western District. Therefore, the Court finds that this factor is neutral.

*(4) All Other Practical Problems*

Defendants argue, and Plaintiff does not dispute, that this factor is neutral. MOTION at 9 n.7.

**B. Public Interest Factors**

*(1) The Administrative Difficulties Flowing From Court Congestion*

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. Defendants argue that this factor weighs slightly in favor of transfer. According to Defendants' evidence obtained from the Administrative Office of the U.S. Courts, the median time to trial for civil cases in the Western District is 16.4 months, while the median in the Eastern District is 24.6 months. MOTION at 11-12. In addition, Defendants argue that due to the retirement of several judges in the Eastern District, the burden on the remaining judges will be unnecessarily heavy. *Id*.

Plaintiff argues that this factor weighs against transfer. Plaintiff asserts that Defendants rely on general case statistics alone, rather than patent-specific statistics for each District. OPP. at 13. Plaintiff relies on a 2010 survey to show that patent cases specifically reach trial four months faster in the Eastern District than in the Western District. *See* Lemley, Mark A., *Where to File Your Patent Case*, 38 AIPLA Q.J. 401, 416, Table 6 (Fall 2010). Further, Plaintiff argues that the Eastern District handles almost three times as many patent cases than the Western District, and has more experience in patent issues. OPP. at 13. Finally, Plaintiff asserts that the Western District has almost twice as many "actions per judgeship" than the Eastern District, leading to further congestion in the Western District. *Id*. at 14.

The Court finds this factor weighs slightly against transfer, since patent cases in the Eastern District reach trial approximately four months faster than in the Western District. In addition, each individual judge's caseload is a relevant factor in considering the level of congestion of a particular court. *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 607 F. Supp. 2d 769, 780 n.11 (E.D. Tex. 2009). The number of actions per judgeship is doubled in the Western District. Therefore, this factor weighs slightly against transfer.

*(2) The Local Interest in Having Localized Interests Decided at Home*

Traditionally, the location of the alleged injury is an important consideration in determining how to weigh this factor. *TS Tech*, 551 F.3d at 1321. However, in a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id*. Local interest may also be determined when a district is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *Hoffman-La Roche,* 587 F.3d at 1336.

Defendants argue that the Western District has a strong local interest in this dispute because Dell's principal place of business is in the Western District, and it is the location in which the accused products were developed. MOTION at 10. Further, Defendants argue that the allegations in the Complaint directly implicate the knowledge and intent of the individuals responsible for directing the accused activities of Dell. *Id*. Defendants also argue that there is no local interest in having the dispute resolved in the Eastern District of Texas, since none of the parties have connections there. *Id*. at 11.

Plaintiff argues that this factor is neutral because Defendants sell their infringing products worldwide, which creates no local interest in any particular district.

The Court finds this factor weighs in favor of transfer. Although Defendants' products are unquestionably sold worldwide, there is a significant local connection to this case in the Western District. Dell's headquarters are in the Western District, it developed the technology there, and the action calls into question the reputation and intent of individuals working and residing in the Western District. Conversely, there is no significant local interest in the Eastern District except for the fact that the product at issue is sold to and used by customers of Defendants in the Eastern District. Where all the relevant events occurred in the transferee district, and the only connection to the original district was that products of the same type were sold there, the transferee district's localized interest in seeing the case decided there significantly favors transfer. *Volkswagen II*, 545 F.3d at 317. Further, because the sale of infringing products in the forum "could apply virtually to any judicial district or division in the United States," to rely on that as a basis to find that the district had a localized interest in the controversy "stretches logic." *TS Tech*, 551 F.3d at 1321. Therefore, this factor weighs in favor of transfer.

*(3) The Familiarity of the Forum with the Law that Will Govern the Case and (4) The Avoidance of Unnecessary Problems of Conflict of Laws*

Because the parties address these factors jointly, the Court will do so as well.

Defendants argue that these two factors are neutral to transfer since the patent claims are covered by federal law, and two federal courts are both capable of applying patent law to infringement claims.

Plaintiff argues that these factors weigh against transfer because the Eastern District is a participant in the Patent Pilot Program, whereas the Western District is not.

Neither Plaintiff nor Defendants indicate any reason why either Court would need to engage in a conflict-of-law analysis, since the application of the laws in both the Eastern and Western Districts would be the same. Further, the Court finds that regardless of the Eastern District's participation in the Patent Pilot Program, both Courts are capable of applying patent law appropriately. The Court finds these factors to be neutral.

## C. Conclusion

The Court finds that six (6) of the private and public interest factors are neutral, one (1) factor weighs in favor of transfer, and one (1) factor weighs against transfer. Therefore, the Court finds that Defendants have not satisfied their burden to show that the Western District of Texas is clearly a more convenient forum for this litigation.

### RECOMMENDATION

Based upon the findings discussed above, the Court **RECOMMENDS** that Defendants' Motion to Transfer Venue to the Western District of Texas (Dkt. #32) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may

serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 21st day of October, 2011.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE